**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL EWAN : | |
| 5510 Warren Street : | |
| Morton Grove, IL 60053 : | |
| : | |
| and : | |
| : | |
| VICTORIA EWAN : | |
| 6077 N. Albany, First Floor : | |
| Chicago, IL 60659 : | |
| : | |
| and : | |
| : | |
| THE ESTATE OF EMMANUEL EWAN : | Civil Action No. _____ |
| By and through MARIA EWAN CHLIMON : | |
| 7700 Kilbourn : | |
| Skokie, IL 60076 : | |
| : | |
| : | |
| and : | |
| : | |
| TANNOUS EWAN : | |
| 6077 N. Albany, Garden Apt. : | |
| Chicago, IL 60659 : | |
| : | |
| and : | |
| : | |
| MARIA EWAN CHLIMON : | |
| 7700 Kilbourn : | |
| Skokie, IL 60076 : | |
| : | |
| and : | |
| : | |
| ELIE EWAN : | |
| 7623 Keeler Avenue : | |
| Skokie, IL 60076 : | |
| : | |
| and : | |
| : | |
| DAVID SEELYE : | |
| L7 Nanni Drive : | |
| Winsted, CT 06098 : | |
| : | |
| Plaintiffs : | |

|  |  |
|---|---|
| v. | : |
|  | : |
| THE ISLAMIC REPUBLIC OF IRAN | : |
| Ministry of Foreign Affairs | : |
| Khomeini Avenue | : |
| United Nations Street | : |
| Tehran, Iran | : |
|  | : |
|  | : |
| Defendant. | : |

## COMPLAINT

1. Plaintiffs, by and through undersigned counsel, bring this action seeking Judgment and damages against the Defendant, the Islamic Republic of Iran, for its heinous acts and sponsorship of foreign terrorists and arising out of the terrorist attack against the United States Embassy in Beirut, Lebanon on April 18, 1983 ("Beirut Embassy Bombing").

2. Pursuant to section 1083(c)(3) of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. 100-181 (2008) ("NDAA 2008 Act"), this case may be filed as a related action to *Dammarell v. Islamic Republic of Iran*, C.A. No. 01-2224-JDB, 2006 WL 2583043 (D.D.C. Sept. 7, 2006) (Bates, J.) and *Estate of Doe v. Islamic Republic of Iran*, C.A. No. 1:08-cv-00540-JDB, 943 F. Supp. 2d 180 (D.D.C. 2013) (Bates. J.) because it arises out of the same acts and/or incidents as those cases. In *Dammarell* and *Doe,* this Court found the Defendant in this action, the Islamic Republic of Iran ("Iran"), liable for the April 18, 1983, terrorist attack on the U.S. Embassy in Beirut, and awarded judgment in favor of plaintiffs, U.S. citizens killed or injured in that attack and their immediate family members.

3. Plaintiffs here seek judgment against Defendant, Iran, and in support of their Complaint allege as follows:

   I. **JURISDICTION AND VENUE**

4. This action is brought in the individual capacity of each plaintiff and, as appropriate, in the capacity as personal representative of the estate more particularly described in the caption of this action for their own benefit, for the benefit for the particular estate, and for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act 28 U.S.C. § 1605A(c), and state common law and statutory law. Subject matter jurisdiction before this Court is proper in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A, and related statutes.

5. This case arises out of the same facts as, and is related to, *Dammarell*, 2006 WL 2583043 which was timely commenced in this Court under 28 U.S.C. § 1605(a)(7) and *Doe,* 943 F. Supp. 2d 180 (D.D.C. 2013) which was timely commenced in this Court under 28 U.S.C. § 1605A. Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

## II.     THE PLAINTIFFS

### The Ewan Family

6. Plaintiff Michael Ewan was at the time of the Beirut Embassy Bombing a citizen of the United States of America and presently resides in the State of Illinois. Plaintiff Michael Ewan was injured in the Beirut Embassy Bombing. At the time he was injured, Michael Ewan was a marine in the United States Marine Corp and acting in the scope of his employment as military personnel. The willful and wrongful and intentional acts of the Defendant caused extreme mental anguish, physical injury and pain and suffering to the Plaintiff. Plaintiff Michael Ewan can sue and be sued in this Court.

7. Plaintiff Victoria Ewan is the mother of Michael Ewan who was injured as a result of the Beirut Embassy Bombing. Victoria Ewan is a citizen of the United States and a resident of the State of Illinois. Victoria Ewan brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Illinois. The injury of her son Michael caused Victoria severe mental anguish, pain, suffering and extreme emotional distress. Plaintiff Victoria Ewan can sue and be sued in this Court.

8. Plaintiff Estate of Emmanuel Ewan ("Estate"), is represented in the action by and through Maria Ewan Chlimon, duly appointed by the Cook County Probate Division, State of Illinois, as the personal representative of the Estate. Emmanuel Ewan, who was alive at the time of the Beirut Embassy Bombing, is/was the father of Michael Ewan who was injured as a result of the Beirut Embassy Bombing. At the time of the Beirut Embassy Bombing which caused the injuries to his son, and at his death, Emmanuel Ewan was a citizen of the United States and a resident of the State of Illinois. The Estate of Emmanuel Ewan brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Illinois. The injury of his son Michael caused Emmanuel severe mental anguish, pain, suffering and extreme emotional distress. Plaintiff Estate of Emmanuel Ewan can sue and be sued in this Court.

9. Plaintiff Tannous Ewan is the brother of Michael Ewan who was injured as a result of the Beirut Embassy Bombing. Tannous Ewan is a citizen of the United States and a resident of the State of Illinois. Tannous Ewan brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Illinois. The injury of his brother Michael caused Tannous severe mental anguish, pain, suffering and extreme emotional distress. Plaintiff Tannous Ewan can sue and be sued in this Court.

10. Plaintiff Maria Ewan Chlimon is the sister of Michael Ewan who was injured as a result of the Beirut Embassy Bombing. Maria Ewan Chlimon is a citizen of the United States and a resident of the State of Illinois. Maria Ewan Chlimon brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Illinois. The injury of her brother Michael caused Mary severe mental anguish, pain, suffering and extreme emotional distress. Plaintiff Mary Ewan Chlimon can sue and be sued in this Court.

11. Plaintiff Elie Ewan is the brother of Michael Ewan who was injured as a result of the Beirut Embassy Bombing. Elie Ewan is a citizen of the United States and a resident of the State of

Illinois. Elie Ewan brings claims for loss of solatium and/or intentional infliction of emotional distress pursuant to § 1605A(c), or, in the alternative, the laws of the District of Columbia or Illinois. The injury of his brother Michael caused Elie severe mental anguish, pain, suffering and extreme emotional distress. Plaintiff Elie Ewan can sue and be sued in this Court.

### David Seelye

12. Plaintiff David Seelye was at the time of the Beirut Embassy Bombing a citizen of the United States of America and presently resides in the State of Connecticut. Plaintiff David Seelye was injured in the Beirut Embassy Bombing. At the time he was injured, David Seelye was a marine in the United States Marine Corp and acting in the scope of his employment as military personnel. The willful and wrongful and intentional acts of the Defendant caused extreme mental anguish, physical injury and pain and suffering to the Plaintiff. Plaintiff David Seelye can sue and be sued in this Court.

### III. THE DEFENDANT

13. Defendant Islamic Republic of Iran is a foreign sovereign state. Iran operated under a constitutional monarchy until January 16, 1979, when Shah Mohammed Reza Pahlavi fled the country after a period of violent unrest orchestrated by the Ayatollah Ruhollah Musawi Khomeini and his followers. On April 1, 1979, Ayatollah Khomeini declared the creation of the Islamic Republic of Iran.

14. Iran is now and has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. Appx. § 2405(j)), and section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984. Iran was designated a state sponsor of terrorism as a result, *inter alia*, of the 1983 Beirut Embassy Bombing.

15. The Iranian Ministry of Information and Security ("MOIS") functions as the Iranian Intelligence Service and, in this capacity, as an agent of Iran.

16. MOIS operates both within and outside Iranian territory.

17. Pursuant to U.S.C. § 1605A(c), Defendant Iran is vicariously liable for the acts of its officers, employees, or agents, including those of MOIS.

IV.     **FACTUAL ALLEGATIONS**

**The April 18, 1983 Attack on the United State Embassy in Beirut**

18.     In *Dammarell* and *Doe*, this Court held Iran liable for the April 18, 1983 terrorist attack on the United States Embassy in Beirut. *Dammarell v. Islamic Republic of Iran* 281 F. Supp. 2d 105, 108-113 (D.D.C. 2003); see also *Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 274 (D.D.C. 2005) (containing factual findings expressly incorporated into the final judgment); 2006 WL 2583043 (D.D.C. Sept. 7, 2006) (final judgment); *Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 183–84 (D.D.C. 2013) (containing factual findings expressly incorporated into the final judgment).

19.     In that case, more than 80 U.S. citizen victims and their families sued the Islamic Republic of Iran seeking damages for their material support of the attack by Hezbollah on the United States Embassy in Beirut.

20.     Following approximately 20 days of evidentiary hearings conducted in two phases, this Court held that 28 U.S.C. § 1605(a)(7) removed the sovereign immunity of Iran for its role in the bombings and that Iran was liable for the 1983 Embassy bombing. *See Dammarell*, 2006 WL 2583043, at *1 & n.2, *3. The Court concluded that the evidence presented at trial "show[ed] unquestionably that Iran provided material support to Hezbollah, and that this support was the proximate cause of the 1983 Beirut embassy bombing and the deaths and injuries that resulted." *Dammarell v. Islamic Republic of Iran*, 2005 WL 756090, at *6 (D.D.C. Mar. 29, 2005). The Court awarded plaintiffs compensatory damages in the amount of $315,919,657.[1] The findings of the Court were set forth in several opinions and are generally as follows:

---

[1] Similarly in *Doe v. Iran* the Court found that Iran had provided material support to Hizbollah and that the support it provided was the proximate cause of the 1983 Beirut embassy bombing and accordingly awarded 333 plaintiffs a total judgment in the amount of over $8.4 billion in compensatory and punitive damages. *Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 183–84 (D.D.C. 2013)

21. The country of Lebanon consists of dozens of different ethnic and religious groups, including Sunni Muslims, Shi'ite Muslims, Maronite Christians, and Druse. By 1975, the political power sharing arrangements did not reflect Lebanon's actual demographics, causing general unrest among the population. As a result, a 15-year civil war began that year.

22. In 1979, the Shah of Iran, then an ally of the United States, was overthrown by the Ayatollah Khomeini and his followers, who set up a fundamentalist Islamic regime in Iran. One of their objectives was to establish Iran as the preeminent power in the Middle East by, among other things, forcing the United States and other Western nations out of the region.

23. By the early 1980s, the Lebanese government was incapable of providing basic social services to, and had little control over most of, the country. The capital city, Beirut, was divided into multiple quarters that were controlled by militias loyal to the various factions vying for dominance.

24. In June 1982, Israel invaded southern Lebanon. Soon after the invasion, Hezbollah — a politico-paramilitary terrorist organization — was established in Lebanon with the guidance and financial and material support of the government of Iran.

25. At all pertinent times herein, Iran provided material support and resources, as defined in 18 U.S.C. § 2339A, to Hezbollah by providing it with funding, direction, and training for its terrorist activities in Lebanon. Iran accordingly sponsored Hezbollah within the meaning of 28 U.S.C. § 1605A.

26. As part of its operations, MOIS acted as a conduit for Iran's provision of funds, and providing training and direction to Hezbollah for its terrorist activities in Lebanon. In so doing, MOIS, acting as an agent of Iran, performed actions within the scope of its agency within the meaning of 28 U.S.C. § 1605A(c), all for which Defendant Iran is vicariously liable.

27. Among Hezbollah's major activities in Lebanon was its opposition to the Western presence in the country, including the presence of the United States.

28. Accordingly, during the period following the 1982 Israeli invasion of Lebanon, Hezbollah and other terrorist organizations began orchestrating a series of violent attacks against

Westerners and Western installations throughout Lebanon generally and in the Lebanese capital of Beirut in particular.

29. In addition to the 1983 and 1984 bombings of the U.S. Embassy, the major attacks perpetrated by Hezbollah and other terrorist organizations during this time period included the October 1983 bombing of the Marine Corps barracks in Beirut, which resulted in the deaths of 241 U.S. servicemen, and the January 1984 assassination of Malcolm Kerr, President of the American University in Beirut.

30. Further, beginning in 1983 and ending in 1991 with the release of U.S. journalist Terry Anderson, numerous citizens of the United States and Western European countries were kidnapped in and around Beirut and held hostage, often for extended periods of time.

31. On April 18, 1983, at approximately 1:05 p.m., an unidentified male driver crashed a vehicle laden with hundreds of pounds of explosives into the main entrance of the U.S. Embassy in Beirut.

32. Upon crashing into the Embassy, the vehicle exploded with a force so powerful that seven floors in the center section of the crescent-shaped building collapsed.

33. Portions of the Embassy, including the Marine security guard post, the cafeteria, the United States Information Service library, the personnel section, and the consular section, were completely destroyed by the blast. Other parts of the building were severely damaged.

34. As a result of the blast and the resulting damage and destruction of portions of the Embassy, 63 people were killed. Over 100 others were injured.

35. The 1983 Beirut Embassy bombing was the first-large scale attack on a United States Embassy, in Lebanon or elsewhere that resulted in mass casualties. It also represented Hezbollah's first large-scale attack in Beirut targeting a U.S. facility, ushering in an era of decades of terrorist strikes on United States citizens and facilities at home and abroad.

36. In *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005), this Court took judicial notice of the Court's "extensive" factual findings regarding the involvement of Iran, MOIS and Hezbollah in the April 18, 1983, bombing of the U.S. Embassy in *Dammarell* and entered judgment against Iran in favor of Donna K. Salazar, individually and on behalf of her husband Army Staff Sergeant Mark E. Salazar, who was killed in the 1983 embassy bombing. The Court awarded compensatory damages to the *Salazar* plaintiffs in the amount of $18,297,000.

37. The injuries of the Plaintiff victims of the April 18, 1983, attack in this case, as found in *Dammarell, Doe* and *Salazar*, were a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hezbollah, a Foreign Terrorist Organization, and its members ("Hezbollah"), whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, for all of which the Plaintiffs, and each of them, are entitled to an award of damages to the maximum extent allowed by law.

## COUNT I
## 28 U.S.C. § 1605A(c), PRIVATE RIGHT OF ACTION

38. Paragraphs 1 through 37 are incorporated herein as if fully set forth herein.

39. The Islamic Republic of Iran was and is a state sponsor of terrorism as described in 28 U.S.C. § 1605A(a)(2)(A)(i). Defendant and its agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including planning and carrying out the terrorist attacks on the United States Embassy in Beirut, Lebanon on April 18, 1983.

40. As a direct and proximate result of the willful, wrongful, intentional, reckless and heinous acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs suffered, *inter alia*, physical pain and suffering, mental anguish, emotional pain and suffering, solatium damages and/or economic losses resulting from Defendant's acts.

41.     Pursuant to 28 U.S.C. § 1605A(c), Plaintiffs, who are U.S. nationals may assert a cause of action against Defendant for their personal injuries, including but not limited to, their physical pain and suffering, mental anguish, emotional pain and suffering, solatium damages and/or economic losses that were caused by the provision of material support or resources for such an act, if performed or provided by an official, employee, or agent of Defendant while acting within the scope of his or her office, employment, or agency.

42.     Accordingly, as a result of Defendant's actions, Plaintiffs seek compensatory damages.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendant in such amounts as are permitted by law and in accordance with this Court's prior determinations of awards and Judgments on behalf of similarly situated Plaintiffs for their compensatory, damages, and otherwise as permitted by this Court.

## COUNT II
## LOSS OF SOLATIUM

43.     Paragraphs 1 through 42 are incorporated herein as if fully set forth.

44.     As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Defendant, the Plaintiffs family members of the victims suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims.

45.     Accordingly, Plaintiffs family members bring claims for loss of solatium against Defendant pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia, and/or the State of Illinois.

46.     WHEREFORE, the individual Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

## COUNT III

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

47. Paragraphs 1 through 46 are incorporated herein as if fully set forth.

48. On April 18, 1983, members of Hezbollah willfully, violently, and forcefully caused an explosive device to detonate at the United States Embassy in Beirut, Lebanon.

49. The act of detonating an explosive charge at the U.S. Embassy in Lebanon on April 18, 1983 constituted extreme and outrageous conduct on the part of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS.

50. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs suffered severe emotional distress, entitling them to compensatory damages.

51. Each Plaintiff family member may assert a cause of action for intentional infliction of emotional distress against Defendant in connection with the willful, wrongful, intentional, and reckless actions of Hezbollah members. Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia, and/or the State of Illinois.

52. WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

## COUNT IV
## **PUNITIVE DAMAGES**

53. Paragraphs 1 through 52 are incorporated by reference as though fully set forth herein.

54. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Defendant, each of the Plaintiffs suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship and solatium as a result of being injured in the attack or as a result of their family member being injured in the attack.

55. Under 28 U.S.C. §1605A and/or state and foreign law, the Plaintiffs, and each of them, are entitled to an award of punitive damages to be assessed and awarded against the Defendant for its heinous, reprehensible and unforgiving conduct in perpetrating unrelenting terror upon the United States of America, her citizens, and the Plaintiffs, and each of them. The purposes of punitive damages is to punish, for retribution and to deter further acts of terror by the Defendant and other terror organizations and those who provide material support for the sponsorship of terror. This allows, and under the circumstances requires, a message to be sent by this Court to the Islamic Republic of Iran that it's past and ongoing sponsorship of terror will not be countenanced by this Court nor by the United States of America. An award of not less than one billion dollars in punitive damages should be assessed against the Defendant, and Judgment should be entered on behalf of the Plaintiffs, and each of them, in such amount of punitive damages, to be shared among them in direct proportion to the other damages awarded to each of the Plaintiffs, and as the interests of justice may allow.

56. WHEREFORE Plaintiffs demand that judgment be entered for punitive damages, jointly and severally, against Defendant, in the amount of $1 BILLION DOLLARS ($1,000,000,000).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, pray that the Court:

A. Grant Plaintiffs judgment in their favor against Defendant on Counts I through IV; and

B. Award Plaintiffs;

1. Compensatory damages against Defendant the Islamic Republic of Iran, in the amount to be proven;

2. Punitive damages against Defendant, the Islamic Republic of Iran in the amount of ONE BILLION DOLLARS ($1,000,000,000);

3. Pre-judgment interest as allowed by law;

4. Reasonable costs and expenses;

     5. An award of reasonable attorneys' fees; and

Such other and further relief which the Court may determine to be just and equitable under the circumstances.

Dated: August 11, 2017                     Respectfully submitted,

                                                 HEIDEMAN NUDELMAN & KALIK, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax:    202-463-2999

By: */s/ Richard D. Heideman*_____
    Richard D. Heideman (No. 377462)
    Noel J. Nudelman (No. 449969)
    Tracy Reichman Kalik (No. 462055)

*Counsel for All Plaintiffs*

Gina M. Di Bella
Michael J. Di Bella
Di Bella & Di Bella, P.C.
707 Skokie Boulevard, Suite 600
Northbrook, IL 60062
Telephone: 312-372-1440
Telefax:    312-372-1959

*Counsel to the Ewan Family Plaintiffs*